ALVAH LINDSEY *vs.* FRED R. SPEAR.

Knox.    Opinion October 8, 1914.

*Assumption of Risk.    Negligence.    Ordinary Care.    Reasonably Safe Place.*

1.  It is the duty of a master to use reasonable care to provide a reasonably safe place for his servant to work in.
2.  A servant assumes the risks which are ordinarily incident to his employment, and such other risks as are known to him, or which by the exercise of reasonable care he ought to know.  He assumes the obvious risks.
3.  When the evidence of negligence in an action to recover for personal injuries is of such a character that only one conclusion can be drawn by reasoning and reasonable men, its effect becomes a matter of law.
4.  If the plaintiff's evidence in an action for personal injuries caused by the alleged negligence of the defendant would not warrant a finding by the jury that the defendant had been negligent, it was the duty of the court to direct a verdict for the defendant.

On exceptions by plaintiff.    Exceptions overruled.

This is an action to recover for injuries which plaintiff claims to have sustained by reason of the negligence of the defendant.  At the conclusion of the evidence, the presiding Justice directed a verdict for the defendant, and the plaintiff thereupon excepted to said directing of said verdict.

The case is stated in the opinion.

*Philip Howard,* for plaintiff.

*Arthur S. Littlefield,* for defendant.

SITTING:  SAVAGE, C. J., BIRD, HALEY, HANSON, PHILBROOK, JJ.

SAVAGE, C. J.  Case to recover for injuries caused by defendant's alleged negligence.  The presiding Justice directed a verdict for the defendant, and the plaintiff excepted.

The plaintiff was employed by the defendant in unloading coal from a vessel.  The coal was being hoisted by means of shears and hoisting gear from the hold of the vessel in tubs to the level of the stage on which the plaintiff worked, and was then emptied from the tubs into wheelbarrows, and the plaintiff's particular duty was to wheel it from the tubs across the stage and dump it in the shed.  It was also his duty, when a tub was hoisted, to assist in emptying or dumping it into his wheelbarrow.  It took two tubs, about 1000

pounds of coal, to fill the wheelbarrow. When the accident happened one tub had already been emptied into the barrow, and another one was hoisted. The plaintiff describes what followed in these words:—"When this tub came up we dumped it. Those shears would certainly always have a shake; when this rocked, it rocked the whole stage, . . . . and something swiveled like that, and when it did I went over the line. . . . . Something seemed to travel. I noticed something slipped under my feet and when it did, it throwed me right over the line."

The stage was a completed structure. One end was suspended by chains attached to the shears overhead. The other end rested on a platform, which was several feet above the wharf. When not in use it appears to have been pulled in. When a vessel came to the wharf to be unloaded, it was pushed out with crowbars so that when ready for use both the shears and the front end of the staging extended over the side of the vessel. The stage was then fastened in position by iron dogs on either side driven into the platform on which it rested. It was further stayed by planks or bars on the platform extending from cleats on the inner end of the stage to the end of the coal shed. And so long as it remained stayed in this manner, no question is made but that it was reasonably safe for men to work upon. The following sketch will give a sufficiently approximate profile view of the situation.

A rope or life line was stretched from post to post across the front end of the stage, about two and one half feet from the floor. The ends were attached to the outer rail posts. Before the plaintiff was employed the stage had been pushed into place for work, and its condition remained unchanged until the time of the accident.

It is the undoubted rule that it is the duty of the master to use reasonable care to provide a reasonably safe place for his servant to work in. It is also the rule that the servant assumes the risks which are ordinarily incident to his employment, and such other risks as are known to him, or which by the exercise of ordinary care he ought to know. He assumes the obvious risks. These principles have been declared so many times that citation of authorities is unnecessary.

The plaintiff in his specifications alleges in substance that the accident was due to one or two or all of the following factors, namely, (1) the insufficiency in height and material of the "life line," which we assume was placed where it was to protect men from falling off the stage either by accident, or when it was shaken by the dumping of coal, (2) the rotten and decayed condition of the platform, so that the dogs would not hold, (3) the insecure fastening of the iron dogs, whereby the stage could sway, (4) the insecure fastening of the braces, so that they became displaced, with the same effect, and (5) that the staging was improperly fastened to the shears. As to the insufficiency of the life line, it need only be said that the defect, if defect it was, was an obvious one, the risk of which was assumed by the plaintiff. The plaintiff had worked on this stage many times and was perfectly familiar with its construction. As to the other supposed defects, there is absolutely no evidence of them, except the rocking or swaying of the stage testified to by the plaintiff, and by one other witness whose presence there is denied and is doubtful. There is no evidence that the dogs had failed to hold, or that the braces were out of place. If either of these things had occurred it must necessarily have been observed after the accident. There were six or eight men working on this coal operation. They were known to the plaintiff. It is not shown that they were unfriendly to him. If the iron dogs were found to be insecure, or the braces out of place, after the accident, it seems beyond belief that some of them would not have known of it, and if they had known of it, it seems equally beyond belief that the knowledge should not have come to the plaintiff. All the witnesses who noticed the

staging afterwards, and there were several, declare that there was no trouble with dogs or braces. It is testified to by one witness that planking in the platform was rotten, but that is of no consequence if the dogs held. The plaintiff suggests that the defects, if they existed, may have been remedied before the witnesses had opportunity to observe them. But there is no evidence to support the suggestion.

On the other hand, the case shows that the stage from the very manner of its construction was not and could not have been entirely steady and firm when great weights of coal were dumped from the tubs to the barrow. That it should shake or sway a little was inevitable. And this must have been known to the plaintiff, and was assumed by him.

Now it appears that the plaintiff had been drinking that morning. He admits it. The evidence shows beyond any reasonable question that he was more or less intoxicated, and that he had been warned that day by fellow workmen of the danger in working upon that stage in an intoxicated condition. His description of his sensations at the time of the rocking and swiveling of the stage are not unlike what might be expected in the case of an intoxicated man.

It is true, as the learned counsel for the plaintiff urges, that the questions we are discussing are questions of fact. It is true, too, that the jury is the proper tribunal to determine questions of fact. But when the evidence as to negligence in a case like this is of such a character that only one conclusion can be drawn by reasoning and reasonable men, it becomes a question of law. *Maine Water Co.* v. *Crane*, 99 Maine, at page 485, and the judgment of the court must follow the conclusion of fact. And if a verdict of the jury should happen to be contrary to that conclusion, it is the duty of the court to set it aside.

Again, the contention of the plaintiff rests solely upon an inference which it draws from what he calls a "rocking" of the stage. There is at least as strong an inference that the rocking which the plaintiff seemed to feel was due to his intoxication.

Upon the whole, we feel bound to say that the evidence, if it had been submitted to a jury, would not have warranted them in finding that the defendant had failed to perform his duty to the plaintiff, with respect to the safety of the stage on which the plaintiff worked. It was, therefore, the duty of the presiding Justice to direct

a verdict for the defendant. *Frederickson* v. *Central Wharf Towboat Co.*, 101 Maine, 406; *Young* v. *Chandler*, 102 Maine, 251; *Veano* v. *Crafts*, 109 Maine, 40.

*Exceptions overruled.*